# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

PATRICIA MULLINS,       )
                         )
        **Plaintiff,**    )
**v.**                       )     **Case No. CIV-20-105-RAW-SPS**
                         )
**KILOLO KIJAKAZI,**     )
**Acting Commissioner of the Social**  )
**Security Administration,** [1]    )
                         )
        **Defendant.**   )

## REPORT AND RECOMMENDATION

The claimant Patricia Mullins requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-nine years old at the time of the administrative hearing (Tr. 69, 323). She completed high school, and has worked as a housekeeping cleaner, hotel clerk, dining room attendant, and short order cook (Tr. 59, 346). The claimant alleges inability to work since August 6, 2016, due to elbow problems, peripheral neuropathy, COPD, thyroid disorder, back problems, and depression (Tr. 345).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on September 15, 2016. Her applications were denied. ALJ Doug Gabbard, II, conducted an administrative hearing and found that the claimant was not disabled in a written decision dated January 30, 2019 (Tr. 45-60). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant could perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except she could frequently climb ramps/stairs, balance, stoop, kneel,

crouch, crawl, handle bilaterally; never climb ladders/ropes/scaffolds, and she must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, other pulmonary irritants, and hazards such as open flames, unprotected heights, and dangerous moving machinery. Additionally, he limited her to semi-skilled work (which requires understanding, remembering, and carrying out some detailed skills, but does not require doing more complex work duties); superficial interpersonal contact with supervisors and co-workers and only minimal interaction with the general public; along with the ability to attend and concentrate for extended periods, but the need for normal, regular work breaks and that she not be required to work at fast-paced production line speeds (Tr. 50). The ALJ thus concluded that the claimant could return to her past relevant work as a housekeeping cleaner (Tr. 59).

## Review

The claimant's sole contention of error is that the ALJ failed to account for limitations assessed by consultative examiner Dr. Kimberly Miller, despite affording her opinion great weight. The undersigned Magistrate Judge finds this contention unpersuasive for the following reasons.

The ALJ found the claimant had the severe impairments of degenerative disc disease, diabetic neuropathy, obesity, bilateral carpal tunnel syndrome, status post surgical release, depressive/bipolar disorder, anxiety/obsessive disorder, and COPD, as well as a number of medically determinable impairments that failed to meet the durational requirement (Tr. 47-48). The relevant medical evidence related to the claimant's mental impairments reveals that the claimant was noted to have a single major depressive episode

in 2015, and she was also diagnosed with generalized anxiety disorder that same year, with treatment focused on medication rather than therapy through August 2017 (Tr. 1058-1227).

On May 12, 2017, Dr. Kimberly Miller performed a mental status evaluation as part of this disability claim (Tr. 841-845). Dr. Miller noted the claimant's attention and concentration were mildly reduced, but that her memory and judgment were intact, that her mood was dysthymic, and her affect full in that she cried when describing feeling useless because she cannot work (Tr. 843-844). She assessed the claimant with panic disorder with agoraphobia and depressive disorder NOS (Tr. 844). She then detailed a functional assessment of the claimant in which she stated that the claimant was mildly limited in the ability to understand, remember, and perform complex written and oral instructions, accept instructions from supervisors, and interact with co-workers and with the public (Tr. 844-845). She stated the claimant was moderately limited in the ability to maintain regular attendance in the workplace, deal with the usual stresses encountered in competitive work environment, and complete a normal workday or workweek without interruptions resulting from the claimant's psychiatric condition (Tr. 844-845). She stated that the claimant's mental health symptoms appeared to be chronic in nature, that her limitations in work and social functioning are mild to moderate in severity, and that she may benefit from continuing therapy and continuing psychiatric medication (Tr. 845).

On September 27, 2018, Trisha Swift, LPC, wrote a letter stating that she had been treating the claimant since October 2017, and that the claimant has severe anxiety and depression, and her depression makes it difficult for her to complete a routine, and stressful situations can quickly become overwhelming to her (Tr. 1249). Ms. Swift noted that the

claimant was often depressed, sad, and/or anxious, that she cries often during sessions, and that her memory/concentration was fragmented at times (Tr. 1249).

As to her mental impairments, Dr. F. Mateus, M.D. reviewed the record and determined that the claimant's mood may affect her ability to sustain concentration and persistence, and that she would be better with minimal contact with people, given her anxiety (Tr. 136-137). On reconsideration, Dr. Sheri L. Tomak, Psy.D., found that the claimant could perform detailed (not complex) tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but that she would function best in positions with minimal interaction with the general public (Tr. 181).

In his written opinion at step four, the ALJ thoroughly summarized the claimant's hearing testimony, as well as the medical evidence in the record (Tr. 50-59). As to her mental impairments, the ALJ acknowledged the claimant's longitudinal history of treatment for depression and anxiety but found that it was secondary to her physical condition in that treatment notes in the record largely reflected normal psychiatric findings with only occasional mentions of depressed or anxious mood (Tr. 54-55). The ALJ afforded Ms. Swift's opinion partial weight by acknowledging her longitudinal history and limiting her from working at fast-paced production line speeds in light of the remarks about her difficulty completing a routine, and stressful situations becoming overwhelming (Tr. 55). However, he contrasted this with the largely normal treatment note findings as well as the claimant's own reports that she was not even on medication for her mental impairments (Tr. 55). As to Dr. Miller, the ALJ gave her opinion great weight, finding it

consistent and supported by the longitudinal history, and further found important Dr. Miller's statement that the claimant would benefit from continued medication and therapy (Tr. 56). Specifically, the ALJ found it reasonable that the claimant would have mild difficulties with complex tasks during periods of exacerbated symptomatology and limited her to semi-skilled work. He further noted the limitation regarding completion of a normal workday and workweek and therefore found that the claimant could attend and concentrate for extended periods but should have normal regular work breaks *and* not be required to work at a fast-paced production line speed. Although he only found her mildly limited in the ability to interact with co-workers and the public, he nevertheless also limited her to superficial interpersonal contact with co-workers and incidental contact with the public (Tr. 56). As for the state reviewing physician opinions, the ALJ gave partial or little weight to Dr. Mateus's opinion, finding it lacked specific articulation of functional limitations (Tr. 58). He then assigned great weight to Dr. Tomak's mental RFC assessment, as consistent with the record while giving "deference to the claimant's reported symptoms of difficulty interact[ing] with the public while acknowledging the claimant's regularly normal mood and cooperative behavior on exam" and again stated that he limited her to semi-skilled work, rather than complex (Tr. 58). He also stated that he had further limited the claimant to normal work breaks with work that is not at a production pace based on Dr. Miller's and Dr. Swift's reports (Tr. 58-59). He then concluded that the claimant could return to her past relevant work as a housekeeping cleaner and was therefore not disabled.

The claimant contends that the ALJ again failed to properly analyze Dr. Miller's consultative opinion because he failed to account for her moderate limitations in the areas

of maintaining regular attendance, and the ability to complete a normal workday or workweek without interruptions. The Court finds that the ALJ did not, however, commit any error in his analysis. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (internal citation omitted) (*citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995)). The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (*citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)). Here, the ALJ extensively summarized Dr. Miller's assessment and conclusions and gave them great weight, then further limited the claimant in some areas. The Court finds that the ALJ considered her opinion in accordance with the appropriate standards and properly concluded it was entitled to great weight. The claimant contends that the ALJ did not properly account for the two aforementioned moderate limitations because he nevertheless found she could work, but it is clear the ALJ considered these

limitations, and this Court may not reweigh the evidence and simply determine a different RFC. *See Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) ("[W]e 'neither reweigh the evidence nor substitute our discretion for that of the Commissioner.") (*quoting Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004)). In fact, the ALJ noted and fully discussed the findings of all of the claimant's various treating, consultative, and reviewing physicians, including Dr. Miller. The ALJ thus did not commit error in failing to include any additional limitations. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment."). The ALJ's opinion was therefore sufficiently clear for the Court to determine the weight assigned these opinions, as well as sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") [internal citation omitted].

The ALJ specifically noted every medical record available in this case, gave reasons for his RFC determination, and ultimately found that the claimant was not disabled. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th

Cir.2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (internal citations omitted).  The essence of the claimant's appeal is that the Court should reweigh the evidence and reach a different result, which the undersigned Magistrate Judge simply may not do.  *See, e. g., Casias*, 933 F.2d at 800.  Accordingly, the decision of the Commissioner should be affirmed.

### Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct.  The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner.  Any objections to this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**